UNITED STATE DISTRICT COURT

for the

DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. _____

JURY TRIAL: No

DAVID A. PACKARD          Plaintiff

VS.

HON. SEAN M. DUNPHY, former Chief Justice and his successors in office
Massachusetts Probate and Family Court Department

HON. JOHN D. CASEY, Chief Justice
Massachusetts Probate and Family Court Department

PAMELA A. CASEY O'BRIEN, Register of Probate and her successors in office
Massachusetts Probate and Family Court Department, Essex Division

Defendants

WILL FULLER, President and CEO and his successor in office
Transamerica Corporation
                                    Reach and Apply Defendant

MARK PEARSON, President and CEO and his successor in office
Equitable  Holdings, Inc.
                                    Reach and Apply Defendant


COMPLAINT FOR A CIVIL CASE

PARTIES

1.    Plaintiff:         David A. Packard, Pro se
                         28 Hollis Road
                         Lynn, Massachusetts  01904
                         (781) 489-0069
                         mcgiver101@gmail.com

1

2.      Defendants:    Hon. Sean M. Dunphy, former Chief Justice
                       Massachusetts Probate and Family Court Department
                       Administrative Office
                       3 Center Plaza, Suite 210
                       Boston, MA 02108
                       (617) 788-6600

                       Hon. John D. Casey, Chief Justice
                       Massachusetts Probate and Family Court Department
                       Administrative Office
                       3 Center Plaza, Suite 210
                       Boston, MA 02108
                       (617) 788-6600

                       Pamela A. Casey O'brien, Register of Probate
                       Massachusetts Probate and Family Court Department, Essex Division
                       36 Federal Street
                       Salem, MA 01970
                       (978) 744-1020

        Reach and apply defendants:

                Will Fuller, President and CEO          Registered Agent:
                Transamerica Corporation                C T Corporation
                100 Light Street                        2 Oliver Street
                Baltimore, MD 21202                     Boston, MA 02109
                (410) 576-4571                          (617) 345-9324

                Mark Pearson, President and CEO         Registered Agent:
                Equitable Holdings, Inc.                Corporation Service Company
                1290 Avenue of the Americas             84 State Street, Suite 660
                New York, NY 10104                      Boston, MA 02109
                (877) 222-2144                          (617) 227-9590

## BASIS FOR JURISDICTION

3.      This action arises from violations of the Plaintiff's rights to equal protection and due

process guaranteed in the 14th Amendment to the United States Constitution and violations of

Federal Laws (F.E.P.R A. which is USC §1232 and C.F.R. Part 99, part of the IRS code USC

2

§6103(a) – (e), 26 USC §401(k)(2)(B)(i), 26 USC §401(n), and 26 USC §414 (p)(1)(B).   This

Court has jurisdiction over these matters pursuant to 28 USC §1343(a)(3) deprivation under

color of law, 28 USC §1331 Federal question, and 28 USC §1332, diversity of reach and apply

defendants.


## SUMMARY

4.      This is a very straight forward complaint where the Massachusetts defendant's records

are incontrovertible evidence of the violation of the Plaintiff's constitutional rights under the

equal protection and due process clauses of the 14th Amendment to the United States

Constitution and the federal laws cited above.  In doing so, the Massachusetts Defendants also

violated the Massachusetts Constitution, Massachusetts laws, and their own rules of court.

The plaintiff was a party to a case (Packard v. Packard case number 02D 1835-DVI) at

the Massachusetts Probate and Family Court in Salem, Massachusetts (the "Salem Court").

There was a two day trial starting on August 13, 2003 and concluding on September 10, 2003.

The Massachusetts Rules of Domestic Relations Procedure, Rule 58 (a) requires that "All

judgments in cases governed by these rules **shall enter within thirty days** after completion of

trial." (emphasis added; a copy attached as Exhibit 1). The judgment was dated December 1,

2003 and the docket entry was on December 5, 2003.  This was 86 days after the last trial date

which renders the judgment void.

The time difference between the date the judgment was signed and the date the judgment

was entered on the docket is also important to the federal law violations since a judgment is not

enforceable until entered.  Two of the Salem Court orders regarding the transfer of retirement

3

assets had effective dates before the entry of the judgment. In one case it was 86 days before the entry date.

Since the imperative "shall" is used in Rule 58(a), there are no provisions for enlargement of this time requirement. The Massachusetts Legislature restricted authority for amendment of these rules to the Supreme Judicial Court. Despite motions filed by two attorneys on my behalf and my pro se motions, the Salem Court illegally coerced confiscation of a significant portion of my assets through threats of criminal prosecution while depriving me of my appellate rights.

With the recent death of my wife (Death Certificate attached as Exhibit 2), which puts me beyond any further illegal actions of the Salem Court, I am filing this Complaint requesting the return of all assets confiscated pursuant to the void judgment and violations of federal law. Prior to her passing, any action by me would almost guarantee retaliation by the Salem Court.

## FACTS

5.    Salem Court trial dates

The Plaintiff was a party to a civil case in Salem Court with a two day trial starting on August 13, 2003 and concluding on September 10, 2003. A copy of the Salem Court notice of the initial trial date, a copy of the cover letter to the Register of Probate dated October 9, 2003 (which enclosed the opposing party's Proposed Judgment and the Findings of fact and Conclusions of Law for filing with the Salem Court) and a copy of the Plaintiff's Proposed Judgment in the case also dated October 9, 2003 with the trial dates verified in the first paragraph on page one (copies attached as Exhibits 3, 4, and 5 respectively).

6.  Salem Court failed to comply with the Rule 58(a) 30 day entry requirement

The very last line of Massachusetts Rules of Domestic Relations Procedure, Rule 58 (a) requires that "All judgments in cases governed by these rules shall enter within thirty days after completion of trial." This rule was in effect through January 1, 2004. (a copy of the Table of Rules page 719 of the Rules of Domestic Relations Procedure including amendments received through January 1, 2004 is attached as Exhibit 6).

The Salem Court trial judge signed the judgment on December 1, 2003 which is the event date on docket number 146. The judgment was not entered on the docket until December 5, 2003 (copies of the title page and page 10 of the docket are attached as Exhibit 7). The docket sheet is set up with an event column on the left side for the signature date of a document. The column on the right is the official date of entry on the docket. As can be seen, these dates rarely coincide. Also attached in Exhibit 7 are pages 13, 14, and 15 of 25 of the docket in the web-based format.

As required by Rule 58(a), the last date for compliance with the rule was a date of entry for judgment of October 10, 2003. The Salem Court failed to enter the judgment until December 5, 2003 which was 86 days after the last trial date and 56 days after opposing counsel mailed the Proposed Judgment to the Register of Probate.


7.   Salem Court denied motions for relief from the void judgment and for restitution

Massachusetts Rules of Domestic Relations Procedure, Rule 58 titled "Entry of Judgment" is the only rule of the Probate Court regarding the entry of judgments. Rule 58(a) requires that all judgments shall be entered within 30 days of a trial. As such, adherence to its requirements is critical to the appellate rights of all parties in a trial. The last amendment to Rule

58 was effective July 1, 1989 (Exhibit 1) which was over 14 years prior to my trial date so it is inconceivable that the register of probate and the trial judge were not aware of its requirements.

If the trial judge was not aware the judgment was void when signed, my motion filed on July 20, 2004 and heard on July 27, 2004 informed otherwise. This motion moved the Salem Court to dismiss an amended complaint for contempt and compel the opposing party to return all assets received as a result of the void judgment. The violation of Rule 58(a) was specifically stated in paragraph "B" on the front page. Paragraph "C" on this page stated the judgment was invalid. The facts, rules, and law stated in this motion very clearly indicated that the trial judge had no authority to alter Rule 58(a) or to enforce the resulting void judgment. This motion was denied (copies of the motion and filed notice of appeal are attached as Exhibit 8). The Salem Court had no legal discretion to deny this motion.

On August 6, 2004, I filed a Standing Order 2-99 motion to reconsider the denial of the above referenced motion under Rule 60 as the result of the void judgment. This motion very clearly showed the Salem Court's judgment was void as a result of the violation of Rule 58(a), that the court had no discretion to alter the rule, and enforcement of a void judgment violated my constitution rights to due process and equal protection. This motion was also denied (copies of the motion and filed notice of appeal are attached as Exhibit 9).

On August 9, 2004, I filed Standing Order 2-99 motion for relief of the court's order on an amended complaint for contempt also under Rule 60. This motion detailed the violations of Rule 65.3(c)(6) which is the failure to provide verification and supporting affidavits in the complaint, Rule 62(a) which is a stay on all enforcement until the time for appeal has expired, and M.G.L. Ch. 215 Sec. 22 which stays enforcement pending an appeal. Again, motion was denied (copies of the motion and filed notice of appeal are attached as Exhibit 10).

6

I also filed another Standing Order 2-99 motion to reconsider the denial of my July 20th motion under Rule 60 as the result of invalid service of the complaint for contempt. As detailed in the motion, opposing counsel failed to comply with the time standards of the Uniform Probate Court Practice XXVII. This motion was also denied (copies of the motion and filed notice of appeal are attached as Exhibit 11).

8.    <u>Compliance with Rule 58(a) is mandatory</u>

The Massachusetts Supreme Judicial Court's Rule 3:07, Rules of Professional Conduct – Scope, states "They (the Rules) should be **interpreted with reference to** the purposes of legal representation and of **the law itself**."(emphasis added). The Scope defines **shall** as follows: "Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline." By the use of the word "shall" in Rule 58(a) the Supreme Judicial Court requires strict compliance with both the provision for filing a proposed judgment (Exhibit 1 above) and strict compliance with the Rule 58(a) requirement for the entry of a judgment within 30 days. A complete copy of the Rule 3:07, Scope is attached as Exhibit 12.

9.    <u>Judgment void pursuant to Rule 79(a)</u>

Rule 58(a) states it is **only** subject to the provisions of Rule 54(b) Judgment Upon Multiple Claims Or Involving Multiple Parties, which is not applicable in this case, and Rule 79(a) Civil Docket (a copy of Rule 79 is attached as Exhibit 13). The Massachusetts Rules of Domestic Relations Procedure references Massachusetts Rules of Civil Procedure for these two Rules. The first sentence of Rule 79(a) states "The clerk shall keep the civil docket and shall

7

enter therein each civil **action to which these are made applicable.**"(emphasis added).  Since

the Salem Court judgment did not comply with Rule 58(a) the judgment could not comply with

Rule 79(a).  Defendant Casey O'Brien violated Rule 79(a) by entering a void judgment on the

Salem Court docket.  In addition, this Defendant also violated Rule 79(a) by not docketing

opposing counsel's filing of his Proposed Judgment.

10.    Judgment void as a matter of statutory law

Massachusetts law (MGL Ch. 215 Sec. 30 and 31) requires that the inferior courts

propose rules and amendments for their courts' rules to the supreme judicial court for approval.

In addition, MGL Ch. 211 Sec. 3 provides for the supreme judicial court to unilaterally

promulgate additional rules or amendments and alterations to existing rules of the inferior courts.

The probate court does not have the legal authority to change the probate court rules.  Since the

rules approved by the supreme judicial court have the force of law, the probate court is in

violation of Massachusetts law by its failure to obey its rules or its failure to enforce its rules as

follows:

MGL Ch 211 Sec. 3 states in its second sentence "the justices of the **supreme judicial**

**court** shall also have general superintendence of the administration of all courts of inferior

jurisdiction, including, without limitation, the prompt hearing and disposition of matters pending

therein, and the functions set forth in section 3C; and it **may issue such** writs, summonses and

other processes and such **orders, directions and rules as may be necessary or desirable for**

**the furtherance of justice, the regular execution of the laws, the improvement of the**

**administration of such courts, and the securing of their proper and efficient**

**administration;**"(emphasis added).

MGL Ch. 215 Sec. 30 provides for the Massachusetts Probate and Family Court Department to make rules for its courts subject to submission and approval of the supreme judicial court which has the ultimate power to make, alter, and amend this department's rules "as it considers necessary in order to secure regularity and uniformity." This law also requires a majority of the judges of the probate courts are required for making rules. This specifically prohibits a single judge from making rules of court. MGL Ch. 215 Sec. 31 further verifies the supreme judicial court oversight of rules for the probate courts. Copies of all three laws are attached as Exhibits 14, 15, and 16 respectively.

11.     <u>Judgment void as a matter of case law</u>

The rules of the probate court require approval of the supreme judicial court and cannot be altered or amended without the supreme judicial court's permission under Massachusetts law. As confirmed below, these approved rules have the force of law and are binding upon the court. The Salem Court was without any legal authority to alter, amend, or dispense with Rule 58(a). As such, no judgment could enter in compliance with the rules or with Massachusetts law; consequently, the confiscation of my assets was without legal authority and a violation of my constitutional rights under color of law.

9 Mass. Prac., Civil Practice § 1.17 (3d ed.) (titled: Inherent powers – To make rules of court) states "Generally speaking, where a court has been authorized to promulgate rules regulating the procedure in a particular matter, **rules of court promulgated to such authority have the force of law; they are binding upon the court as well as the parties, and they may not be dispensed** with to suit the circumstances of any particular case" (emphasis added). The following cases were cited in the footnote provided by Westlaw:

<u>Thompson v. Hatch, 20 Mass. (3 Pick.) 512 (1826)</u>

<u>Pratt v. Pratt, 157 Mass. 503, 505, 32 N.E. 747, 748 (1892)</u>

<u>Morin v. Clark, 296 Mass. 479, 482, 6 N.E. 2d 830, 832 (1937)</u>

The following are additional cases where individual judges have been found to have no power to dispense with rules of court:

<u>Metropolitan Life Ins. Co. v Smith, 129 F.Supp.2nd 72 (2001)</u> was an interpleader action to determine the lawful beneficiary of a life insurance policy that the probate court had ordered be paid to a third party in violation of M.G.L.A. c. 208, § 34. According to Westlaw, the judge in the case stated "Judge Sacco had no authority. No judge has that authority. There is no authority. Unless you show me the authority under the law that a judge could do it, it's a nullity." The court found the order "a clear usurpation of power" which rendered it void. The court quoting from Harris v Sannella, 400 Mass. 392, 395, 509 N.E.2d 916 (1987) which was a quote from Lubben v. Selective Serv. Sys., 453 F.2d 645, 649 (1st Cir 1972) "A void judgment is one which, from its inception, was a complete nullity and without legal effect."

<u>Carp v. Kaplan, 251 Mass. 225,228,  146 N.E. 779, 779 (1925).</u>

"Individual judges have no power to dispense with rules of court lawfully adopted to regulate the conduct of business of the court."

<u>Kaufman v. Buckley, 285 Mass. 83, 86, 188 N.E. 607, 608 (1933)</u>

"A Superior Court rule that if a demurer was sustained and leave to amend was not denied, the case should be deemed ripe for final judgment or decree only after ten days from the sustaining of the demurer or such other time as the court might allow was held to lie within the rule making power of the court and to be a rule which individual judges had no power to dispense with."

<u>In re: McNulty's Estate, 290 Mass. 597, 599-600, 195 N.E. 735, 736-737 (1935).</u>

"Where Probate rules provided for an opportunity for the filing of defensive pleadings within a certain time after the return date of a citation, Probate judge could not properly enter a final decree on the return date of the citation without affording an opportunity for the filing of such pleadings."

In re Lucey (1954) 118 N.E. 2d 762, 331 Mass. 292.

"Probate courts themselves cannot change printed forms of the probate courts as approved by the supreme judicial court."


12.    Unconstitutional deprivation of appellate rights

The Massachusetts Supreme Judicial Court has explicitly stated: "It is the entry of a final judgment … that starts the appellate clock" (7 Mass.Pract. Rules Practice § 58.6 (2d ed.). Without a final judgment, appeal of the final judgment including the appeal of numerous unconstitutional interlocutory orders is not possible.  The trial court's flagrant disregard for enforcement of its own rules as well as Massachusetts law deprived me of both substantive due process rights, procedural due process rights and equal protection rights guaranteed in the U.S. Constitution.

A Federal Court reached a similar conclusion by dismissing an appeal in Arnold v United States (1955, CA9 wash) 225 F2d 649 where the trial court did not make determination as required under R. Civ. P. 54 "and plaintiff's attempted on appeal and thereafter their attention was directed to failure of the court to comply with the rule correctly, and plaintiff's petitioned for and obtained such determination and then again appealed, the original attempted appeal was dismissed." as reported in LexisNexis Annotated Laws of Massachusetts.

<u>Weld v Trafton (1980) 10 Mass App 879, 409 NE2d 787</u>   As also reported in LexisNexis Annotated Laws of Massachusetts, "Judgment was improperly entered, where express determination under Massachusetts Rules of Civil Procedure Rule 54(b) was lacking and power of clerk to enter judgment under Rule 58(a) was subject to provisions of Rule 54 (b); judgment vacated and appeal dismissed."   Exhibit 1 is a copy of  Rule 58(a) from the 2003 time period for the Courts reference.   According to Westlaw, Rule 58 was last amended June 8, 1989 to be effective July 1, 1989 so it was in effect over 14 years before the trial date in my case.  Rule 54(b) Judgment Upon Multiple Claims Or Involving Multiple Parties is not applicable in this case.

 <u>Russia Cement Co. v Le Page Co. (1899) 174 Mass 349, 55 NE 70</u>   LexisNexis reports "The phrase "final judgment" has two meanings. It may indicate the judgment …gives to the party aggrieved the right to invoke the action of the higher court"

The following are additional cases where an appeal was not allowed since a final judgment had not been entered in compliance with court rules.  From Westlaw Massachusetts Rules of Domestic Relations Procedure Rule 58 © 2014 Thomson Reuters:

<u>Levy v. Bendetson (1978) 379 N.E.2d 1121, 6 Mass.App.Ct. 558)</u>  "A judgment is only when so set forth and when entered as provided in [certain] Rule, and, thus, there was no judgment providing a basis for an appeal, and appeal had to be dismissed."

<u>Com. V. One Thousand Three Hundred and Forty Dollars (1983) 451 N.E.2d 137, 16 Mass.App.Ct. 950.</u> "Appeal from trial court's order … would be dismissed, because trial court … failed to enter judgment as required by rule of civil procedure."

Zoning Bd. of Appeals of Greenfield v. Housing Appeals Committee (1983) 446 N.E.2d 748, Mass.App.Ct. 553. "… a judgment was never entered, appeal from superior court's decision had to be dismissed."

Petition of Salley (1980) 413 N.E.2d 781, 11 Mass.App.Ct. 40 "Where no judgment had been entered in trial court, appeal relating to petition for habeas corpus had to be dismissed."

Continental Bronze v. Salvo & Armstrong Steel Co. Inc. (1979) 397 N.E.2d 1143, 8 Mass.App.Ct. 799. "Dismissal of appeal in suit on construction bond was required because of lack of entry of judgment."

City of Boston v. Boston Police Patrolmen's Ass'n, Inc. (1979) 392 N.E.2d 1202, 8 Mass.App.Ct. 220 "In an action brought by the city to vacate an arbitrator's award … trial judge entered order allowing confirmation, and city appealed, but appeal had to be dismissed, because no judgment had been entered."

Koonce v. Aldo Realty Trust (1979) 392 N.E.2d 549, 8 Mass.App.Ct. 199 "Appellate procedure was premature and appeal subject to dismiss where no judgment was ever entered as required by this rule."

Harrow v. Board of Appeals of Pittsfield (1979) 391 N.E.2d 276, 7 Mass.App.Ct. 937. "Where no judgment was entered by the superior court … any effort to obtain appellate review was premature."

E. F. Semas Trucking, Inc. v. Mayor of Taunton (1979) 388 N.E.2d 326, 7 Mass.App.Ct. 907. "Where no judgment had been entered, appeal would have to be dismissed."

Police Dept. of Fall River v. Commissioners of Civil Service (1977) 369 N.E.2d 1042, 5 Mass.App.Ct. 896 "In cases where no judgment is entered pursuant to orders, case not properly before Appeals Court."

13.  <u>Evidence of the Plaintiffs intention to pursue an appeal of the judgment and seven</u>
<u>interlocutory orders or rulings.</u>

The following is a brief chronology of actions taken with documentation verifying the

plaintiff's intention to appeal the judgment and seven interlocutory orders or rulings.   The seven

tape requests in preparation for the appeal are listed as Events 131, 132, 133, 134, and 135 on

page 10 of the docket sheet (Exhibit 7).  Among the most egregious of the latter were orders to

sell or transfer assets that were solely my property without trial.  Probate Court rules require the

notice of appeal to be filed within ten days of the judgment with the appeals questionnaire to be

filed within a ten day period thereafter.  My attorney signed an affidavit attesting to his

December 2, 2003 filing of the original appeal questionnaire on a replacement questionnaire

dated March 5, 2003 (a copy of the attorney's cover letter to the Salem Court clerk, the second

questionnaire, and the stamped filed questionnaire with a February 26, 2004 stamped over with a

March 08, 2004 stamp are attached as Exhibit 17).  It is evident from the multiple date stamps

on the appeal questionnaire that Defendant Casey O'Brien failed to ensure the timely recording

of the original appeals questionnaire thus delaying the process to my detriment.

| | |
|---|---|
| <u>August 13, 2003</u> | First day of trial. |
| <u>August 15, 2003</u> | Trial tape request for first day of trial.  Preparation for appeal (Exhibit 18). |
| September <u>10, 2003</u> | Last day of trial. |
| September 12, 2003 | Trial tape request for last day of trial.  Preparation for appeal (Exhibit 19). |
| <u>December 1, 2003</u> | Divorce judgment signed by the trial judge |
| <u>December 2, 2003</u> | Appeals questionnaire filed with the court.  See Exhibit 17 for attorney's affidavit for this filing date. |
| <u>December 5, 2003</u> | Divorce judgment entered |

14

<u>December 14, 2003</u>   Notice of appeal filed with the court (Event number 148 on Exhibit 7)
within the ten day required time frame.


14.   <u>Plaintiff's sole remedy for the void judgment</u>

As early as 1854, the Massachusetts Supreme Judicial Court recognized that
Massachusetts courts must not be allowed to enforce a void judgment.  In a case where an
individual's rights were violated under the Massachusetts Constitution, Judge Lemuel Shaw,
Chief Justice of the Massachusetts Supreme Judicial Court (1830 to 1860) stated "But where it
appears, on the face of the proceedings, that the magistrate had no jurisdiction, the proceedings
are wholly void, the commitment is without authority, and the party committed is entitled to be
discharged from his imprisonment without reversal of the judgment."  <u>Herrick v. Smith (1854) 1</u>
<u>Gray 1, 67 Mass. 1.</u>

Federal courts have reached the same conclusion.  In <u>Crosby v. Bradstreet Co., 312 F.2d</u>
<u>483 (2nd Cir.) cert. denied, 373 U.S. 911 (1963)</u> the court found that "The order dated July 8,
1933 was in violation of the First Amendment to the Constitution, see <u>Near v. Minnesota ex rel.</u>
<u>Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)</u>. <u>Shelley v. Kraemer, 334 U.S. 1, 68</u>
<u>S.Ct. 836, 92 L.Ed. 1161 (1948)</u> indicates that the First Amendment limits court action. The
order was void, and under Rule 60(b) (4) of the Federal Rules of Civil Procedure, the parties
must be granted relief therefrom."  Here the court found a void judgment can never acquire
validity through laches and vacated a judgment as void 30 years after entry.  "See also <u>Marquette</u>
<u>Corp. v. Priester, 234 F.Supp. 799</u> (E.D.S.C.1964) where the court expressly held that clause
Rule 60(b)(4) carries no real time limit." (7 Mass. Prac. Rules Practice R 60 (2d ed.)).  It should

be noted that Rule 60(b) (4) of the Federal Rules of Civil Procedure is identical to Rule 60(b)(4) of the Massachusetts Rules of Civil Procedure.

A Massachusetts appeals court also found there was no time limit to relief from a void judgment. Massachusetts Rules of Civil Procedure Annotated, Rule 60 Note 19 on page 348 states "Motion for relief from judgment which was void from its inception lies without limitation of time." Bowers v. Board of Appeals of Marshfield (1983) 448 N.E.2d 1293, 16 Mass.App.Ct. 29, review denied 451 N.E.2d 1167, 389 Mass. 1104. According to Rule 60 Note 3 on page 341 of the referenced annotated procedures, another appeals court ruled that "relief from judgment is required if judgment is void." Sarin v. Ochsner (2000) 721 N.E. 932, 48 Mass.App.Ct. 421.

7 mass. Prac. Rules Practice § 60.11 (2d ed.) titled "Substantive relief – For a void judgment", states "As soon as a party, even a party who originally obtained it, satisfies the court that the judgment was void, the court *must* vacate it; no question of discretion exists." Westlaw cites the following cases for lack of discretion:

Wang v. Niakaros, 67 Mass.App.Ct. 166, 169, 852 N.E.2d 699, 702 (2006)

Colley v. Benson, Young & Downes Insurance Agency, Inc., 42 Mass.App.Ct. 527, 533, 678 N.E. 2d 440, 444 (1996), review denied, 425 Mass. 1105, 682 N.E. 2d 1362 (1997)

Curly Customs, Inc. v. Pioneer Financial, 62 Mass.App.Ct. 92, 101, 814 N.E. 2d 1176, 1181 (2004) citing earlier edition of Treatise

Field v. Massachusetts General Hospital, 393 Mass. 117, 118, 469 N.E.2d 819, 821 (1984)

O'Dea v. J.A.L., Inc., 30 Mass.App.Ct. 449, 456, 569 N.E. 2d 841, 846, review denied, 410 Mass. 1102, 573N.E. 2d 984 (1991)

Fleishman v. Stone, 57 Mass.App.Ct. 916, 96, 784N.E. 2d 20, 21 (2003) (rescript)

15.  <u>Notice of Salem Court malfeasance to Defendant Dunphy</u>

On August 11, 2004 I faxed and mailed a letter to Chief Justice Dunphy informing him of the trial judge's malfeasance which included the violation of Rule 58(a), enforcement of a void judgment, using invalid contempt complaints to extort assets from me, and failure to enforce other court rules and Massachusetts laws regarding perjury and fraud upon the court detailed in a motion for sanctions against the opposing attorney and his client. Copies of the three Standing Order 2-99 motions for relief from the void judgment and void orders (Exhibits 8, 9, and 10 in Number 7 above) were enclosed as was a copy of the motion for sanctions (docket number 210 on page 13 of 25, Exhibit 7). This letter also requested that the chief justice assign a new judge to my case to review and rule on the enclosed motions. It appeared that part of the original fax was not fully transmitted so I sent a second fax on August 11, 2004 then mailed the letter and documents. I sent a third fax on August 12, 2004 with a copy of the motion for sanctions (copies of the three faxes, underlying letters, and envelope are attached as Exhibit 20). I received a letter from Chief Justice Dunphy on August 23, 2004 declining to take any action on my behalf (a copy attached as Exhibit 21).

The chief justice of the probate court derives his or her authority from M.G.L. Ch. 217 Sec. 8 which states "The justice provided for under the provisions of section 1 of chapter 211B as the chief justice for the probate and family court department, in addition to his judicial powers and duties, shall, subject to the superintendence authority of the supreme judicial court as provided in section 3 of chapter 211, have the power, authority and responsibility of a chief justice as set forth in section 10 of chapter 211B."

Chapter 211B Section 10 states in part "(v) the chief justice shall have the **power to transfer cases** and matters from a court to any other court within his department, to consolidate

17

cases", "(xv) the chief justice shall have the responsibility to sit and **perform judicial duties**, within his department, during the course of the calendar year;" and "(xvi) the chief justice shall have the **power to discipline any justice** assigned or appointed to his department who refuses or fails to comply with any order concerning the performance of his duties as justice or any other lawful order of the chief justice or deputy court administrator of his department; provided, however, that the chief justice shall also have the power to require any justice assigned or appointed to his department to participate in a judicial enhancement program in **response to any action of such justice which brings the judiciary into disrepute, which lowers the public confidence in the judiciary or which impedes the administration of justice.**" (emphasis added). A copy is attached as Exhibit 22. Defendant Dunphy clearly had the legal authority to discipline the trial judge and the duty to do so in order to protect the integrity of his department and protect the due process rights of the parties before probate judges. His letter to me refusing to even investigate serious breaches of rules, law, and rights is a clear indication of his failure to fulfill his responsibilities of office.

According to the provisions of M.G.L. Ch. 211 Sec. 5 "The office of the chief justice of a department of the trial court, as provided in section 1, shall not be deemed a judicial office as comprehended under the provisions of Article I of Chapter III of Part the Second of the Constitution." (a copy attached as Exhibit 23).

16.   <u>Salem Court Register of Probate malfeasance</u>

Although there are some differences in the ancillary duties of the register of probate when compared with the traditional clerk of courts, the primary duty is to receive, docket, index, certify, and preserve court orders, pleadings, and other filed legal documents with the court.

M.G.L. Ch. 217 Sec. 15 titled "Register: duties, custody of records, etc." states in its first line "The register shall have the care and custody of all books, documents and papers pertaining to his court, or deposited with the records of insolvency or filed in the registry of probate, and shall carefully preserve them and deliver them to his successor."

The Supreme Judicial Court's Rule 3:12 is titled "Code of Professional Responsibility for Clerks of the Courts" confirms the inclusion of registers of probate as clerks of court. Canon 1 states "This Code shall be known as the "Code of Professional Responsibility for Clerks of the Courts of the Commonwealth of Massachusetts." Its purpose is to **define norms of conduct and practice** appropriate to persons serving in the positions covered by the Code and thereby to contribute to the preservation of public confidence in the integrity, impartiality, and independence of the courts. The word "Clerk Magistrate" in this Code, unless otherwise expressly provided, shall mean anyone serving in the position of Clerk Magistrate, Clerk, **Register**, Recorder, Assistant Clerk Magistrate, Assistant Clerk, Assistant Register, or Deputy Recorder, Judicial Case Manager or Assistant Judicial Case Manager, in the Supreme Judicial Court, the Appeals Court, or a Department of the Trial Court of the Commonwealth, whether elected or appointed, and whether serving in a permanent or temporary capacity. The words "elected Clerk Magistrate" shall also include a person who is appointed to complete the term of an elected Clerk Magistrate. The word "court" in this Code shall mean the Supreme Judicial Court, the Appeals Court, a particular division of a Department of the Trial Court, or **a particular Department of the Trial Court** if the Department does not have divisions." (emphasis added).

Canon 2 of the Code is titled "Compliance with statutes and rules of court". It states "A Clerk Magistrate **shall comply with the laws of the Commonwealth, rules of court, and**

**lawful directives of the several judicial authorities of the Commonwealth.** The words "judicial authorities" in this Code, unless otherwise expressly provided, shall mean the Justices of the Supreme Judicial Court and Appeals Court, the Chief Administrative Justice of the Trial Court, the **Administrative Justices of the several Departments of the Trial Court**, or Associate Justices of the Trial Court, as is appropriate under the circumstances. A Clerk Magistrate shall also comply with the lawful directives of the Court Administrator." (copies of Canon 1 and 2 attached as Exhibit 24).

Despite the register of probate's absolute obligation to comply with Massachusetts law and the rules of court, Defendant Casey O'Brien docketed the void judgment 86 days after the trial date in my case which violated Rule 58(a), and my federally protected due process rights.

In <u>Pruner v. Clerk of Superior Court (1981) 415 N.E.2d 207, 382 Mass.309</u>, the court found "Clerk of superior court and former assistant clerk of that court were "public employees" under M.G.L.A. c. 258 holding "public employers" liable for losses caused by negligence of "public employees" … in action against clerk and assistant for negligently entering judgment against plaintiff in a separate action which was ultimately decided in plaintiff's favor" as reported in Westlaw Massachusetts Rules of Domestic Relations Procedure Rule 58 © 2014 Thomson Reuters.

It should be noted that the referenced case was decided in 1981 which preceded Defendant Casey O'Brien's illegal actions by about 21 years. The Defendant graduated from law school in 1989 and started as register of probate 1997. With this level of experience it is perplexing that she would docket a void judgment that was dated 81 days after the trial date and 56 days after its lawful entry date.

17.   <u>Salem Court violations of federal law</u>

There were four provisions of the illegally entered judgment which directly violated federal law.   The first two indicate the court's propensity to ignore the law and the Plaintiff's rights there under.  The first was a violation of the Family Educational and Privacy Rights Act (U.S.C. Sec. 1232 and C.F.R. Part 99) where the Salem Court required my children to provide copies of their grades as a precondition for any opposing party college tuition contribution. Since the Salem Court illegally attached all of my financial assets, the judgment also required my children to liquidate and use their United States savings bonds for tuition which I would guess is also a violation of federal law(s).  The second violation was the requirement for me to provide copies of my future federal tax returns which is a violation of part of the I.R.S. code (U.S.C. Sec.6103(a) – (e)).  The motions to strike these provisions were filed on May 21, 2004 as numbers 192 and195 on the court's docket (Exhibit 7, pages 14 and 15 of 25) by my attorney. The court declined to hear these motions or rule on them.

The third violation and fourth violations of federal law in the judgment and related orders were on the Qualified Domestic Relations Orders (QDRO) for my defined benefit retirement plan dated November 9, 2004 (copy attached as Exhibit 25, docket number 288 as last page) and my defined contribution retirement (401k) plan dated March 22, 2005 (copy attached as Exhibit 26, docket number 318 as last page).  The "Effective Date" on Exhibit 25 page 2(e) is September 10, 2003 which is 81 days before the judgment was signed and 86 days before its entry.  The "Effective Date" on Exhibit 26 page 2 (e) is December 1, 2003 which is 4 days before the judgment was entered.

Since the effective date of both of these orders predates the entry of the judgment, they are also void and unenforceable.  As further evidence of the entry date as the proper effective

21

date, Item 3 in the judgment states in part "Commencing on Friday, December 5, 2003 and on each Friday thereafter, the Defendant shall pay directly to the Plaintiff ...".

As previously shown, neither a judgment nor any of its provisions are valid until entered on the court's docket. Since both of the QDRO's are void, the distribution of proceeds from these plans violates 26 USC §401(k)(2)(B)(i) which defines lawful distributions outside a QDRO, 26 USC §401(n) which allows distributions via a QDRO, and 26 USC §414 (p)(1)(B) which requires a valid judgment or order.

Two letters from the plan administrator, SBERA in both plans, verify the effective dates and amounts of the illegal distributions (copies attached as Exhibit 27, 401k plan, and Exhibit 28, defined benefit plan). Exhibit 27 dated March 29, 2005 states $85,231.00 was transferred from my 401k as of December 1, 2003 which was before the judgment was entered. Exhibit 28 dated November 19, 2004 states $57,437.24 was transferred from my defined benefit plan as of November 1, 2004 which was 335 days **after** the judgment date and 412 days after the effective date in the QDRO rendering. This means that even if the judgment and QDRO were not void, nearly a year of my defined benefit contributions and earnings were illegally transferred from the plan in further violation federal law. A copy of the SBERA distribution check dated February 4, 2005 indicates that the actual amount illegally removed from my defined benefit plan was $73,452.08 (a copy of the check is attached as Exhibit 29). A copy of the SBERA 401k distribution check dated April 22, 2005 in the amount of $85,532.20 is attached as Exhibit 30.

18.   Reach and apply Defendant Transamerica Corporation

The void judgment required the transfer of $19,818 from my Fidelity IRA (a copy of the transfer is attached as Exhibit 31), $49,616, from my Fidelity money market account (a copy is

attached as Exhibit 32), $17,025 in additional funds that were in my Fidelity account after I
closed the account to prevent further illegal seizures (a copy is attached as Exhibit 33),
$85,532.20 from my Savings Bank Employee Association (SBERA) defined contribution
retirement 401k, and $73,452.08 from my SBERA defined benefit retirement plan. These illegal
transfers totaled $245,443.28.

A Citizens bank CD number 57857002 in the amount of $45,373 was opened on January
26, 2005 with funds from Fidelity and a Citizens Investment Services Corp. account number
N6M-058998 was opened on January 5, 2005. The initial CD statement covering the period of
December 31, 2004 to January 31, 2005 is attached as Exhibit 34 (pages 1 and 2 of 3). Copies
of investment account statements for February, April, and May all from 2005 indicate the
following transfers (copies attached as Exhibit 35):

| | | |
|---|---|---|
| 2/11/2005 | Citizens CD (Fidelity funds) | $45,395.58 |
| 2/15/2005 | SBERA defined benefit funds | $73,452.08 |
| 4/28/2005 | SBERA 401k funds | $85,532.20 |
| 5/3/2005 | Transamerica payment | ($55,000.00) |
| | Balance | $149,379.86 |

On May 3, 2005 a universal life policy number EP00017961 was purchased from
Transamerica Life Insurance Company which is a subsidiary of the Defendant Transamerica
Corporation. The premium paid was $55,000 with a policy enhancement fee of an additional
$550. Pages 1 and 3 of the policy are attached as Exhibit 36. This policy was clearly purchased
with the proceeds of my retirement accounts.

19.    <u>Reach and apply Defendant Equitable Holdings, Inc.</u>

On September 28, 2007 a rollover IRA account contract number 3-07637474 with a life insurance component was purchased from AXA Equitable Life Insurance Company for $207,724.01 with funds from my retirement accounts. The Citizens investment account, which had grown from $149,379.86 on May 3, 2005 to $207,488.46 on September 28, 2007 as the result of profits from investments was liquidated for the purchase of this policy (a copy of the statement for September 2007 is attached as Exhibit 37). A copy of the purchase confirmation notice dated October 2, 2007 is attached as Exhibit 38. This policy was also clearly purchased with the proceeds of my retirement accounts.

The name of AXA Equitable Life Insurance Company was changed to Equitable Financial Life insurance Company and is a subsidiary of Defendant Equitable Holdings, Inc. Mark Pearson is listed as the president and CEO on the Defendant's website as of this date with an address of 1290 Avenue of the Americas New York, NY 10104.

CONCLUSIONS

20.    The judgment referenced in this Complaint was indisputably void. The Salem Court's own documents prove this beyond any possible question. The trial judge and Defendants Dunphy and Casey O'Brien (the "Massachusetts Defendants") violated Rule 58, which had been effective since 1989, and Rule 79 which was last amended December 13, 1981. Compliance with both of these rules is mandatory. Both contain the imperative "shall" regarding compliance.

21.    Massachusetts law prohibits changes to all Massachusetts court rules without the approval of the Supreme Judicial Court. This power was granted to the SJC by the

24

Massachusetts Legislature (Ch. 211 Sec. 3, Ch. 215 Sec. 30 and 31). The case law cited above verifies court enforcement of these rules and laws.

22.     The Massachusetts Defendants knew the Rules and law had been violated and that the judgment was void. They chose to enforce the void judgment under color of law using their official authority to illegally confiscate the Plaintiff's property and intentionally deprive the Plaintiff of his federally protected equal protection and procedural due process rights. This conduct also usurped the power of the Supreme Judicial Court and the Massachusetts Legislature and was official malfeasance.

23.     Perhaps the single most important procedural due process right provided by the Constitution and the laws of this country is the right to appeal a court's decision. The rendering and docketing of the void judgment effectively deprived the Plaintiff of this fundamental right as indicated by the case law cited. The Salem Court records clearly show the Plaintiff's intention to appeal the judgment as well as appeal seven interlocutory orders or rulings. The actions of the Massachusetts Defendants directly caused this loss of the Plaintiff's right to appeal.

24.     The Massachusetts Defendants also violated the Plaintiff's substantive due process rights by depriving the Plaintiff of property under color of law. They essentially extorted compliance with the void judgment by financial sanctions and threats of incarceration which resulted in the illegal transfer of my property.

25.     The trial judge included provisions in the void judgment which violated USC §1232, C.F.R. Part 99 (F.E.P.R A.) and USC §6103(a) – (e) which is part of the IRS Code.  The trial judge intentionally enforced these provisions after being informed that they were federal law violations (docket numbers 192 and 195) indicating a callous indifference to the canons of judicial conduct and oath of office.  Defendant Dunphy's inexcusable failure to fulfill his official duty to take corrective action when notified of the illegal activities of the Salem Court showed a disturbing distain for the due process and equal protection rights of the Plaintiff.

26.     The Massachusetts Defendants also violated 26 USC §401(k)(2)(B)(i), 26 USC §401(n), and 26 USC §414 (p)(1)(B) by enforcing QDROs that were invalid as drafted as well as being part of a void judgment.  Copies of these QDRO's were provided to Defendant Dunphy about three months before they were entered on the court docket.

RELIEF

27.     Find the judgment dated December 1, 2003 is void and that all Salem Court orders after October 10, 2003 are illegal and unenforceable;

28.     Find the QDRO of my 401k failed to comply with federal law rendering it invalid and all funds illegally transferred remain the property of the Plaintiff.  Further find that Transamerica insurance policy number EP00017961 illegally purchased with a portion of the proceeds from my 401k is also the property of the Plaintiff and order Transamerica Corporation to comply with this finding;

29.     Find the QDRO of my pension plan failed to comply with federal law rendering it invalid and all funds illegally transferred remain the property of the Plaintiff. Further find that AXA rollover IRA account contract number 3-07637474 illegally purchased with a portion of the proceeds from my 401k, pension plan, and Fidelity accounts is also the property of the Plaintiff and order Equitable Holdings, Inc. to comply with this finding;

30.     Find the deed for the real property located at 16 Guild Road in Beverly, Massachusetts dated January 22, 2004 and recorded at the Essex South Registry of Deeds in Book 22313 Page 134 was an illegal transfer rendering it void. Further find a subsequent deed to The Sharon L. Packard Trust dated May 30, 2013 and recorded in Book 32515 Page 122 void as well.

31.     Order Defendant Casey to retroactively invalidate the deeds referenced above in order to return the real estate to its status on October 10, 2003 which is the last date for legal entry of a judgment in the case.

32.     Order Defendants Casey, Dunphy, and Casey O'Brien to take all actions necessary to reverse the economic damage inflicted on the Plaintiff, including time-value adjustments to date, from the illegal orders, instructions, and actions of the Salem Court after October 10, 2003. This restitution should include all assets confiscated, all payments made, all expenses incurred, and all opportunity costs resulting from the enforcement of the void judgment.

33.     Order punitive damages against Defendants Casey, Dunphy, and Casey O'Brien and any other relief as the Court determines to be just.

<u>Certification and Closing</u>

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the requirements of

Rule 11.


I agree to provide the Clerk's Office with any changes to my address where case-related papers

may be served. I understand that my failure to keep a current address on file with the Clerk's

Office may result in the dismissal of my case.

Date of signing: *August 30, 2021*

Signature of Plaintiff : _____

David A. Packard, Pro se